We'll call the matter of Western Titanium. Mr. Schroeder, we, as you know, filed both a petition for a writ of indemnus for prohibition and we filed an appeal, which I'll come back to the issue, the legal issue in a second, but both are pursuing the remedy of asking this Court to vacate the April 15th order. While in both proceedings, Your Honors, there have been a myriad of facts and procedural history and information swirling in both briefs, the issue reduces itself to one question, one simple question that we are asking the Court to resolve. Can the district court compel Western Titanium and Mr. Schroeder to give privileged and otherwise protected, and by otherwise I mean Fifth Amendment protected, information to the government? I submit to you the answer is no, particularly given that the government never has supported any claim that the documents at issue below are not privileged and has never given in to the Western's desire to have their privilege adjudicated, has resisted at every turn. The government has refused to return them, has used them repeatedly, has insisted in participating in the adjudication, and there's been no precedent for any opinion by any court ever that the government should be allowed to participate in a court's adjudication of privilege. I want to address the points the Court made, but I'll stay while the argument goes. Kennedy, counsel, right at the threshold, this whole thing, one of the difficulties, at least apparent difficulty, here is the district court order doesn't look very fine.  of a district court order. For example, the Court says, the Court anticipates, it says, we're denying without prejudice. There might be subsequent motions, and we want you to brief the privilege, the work privilege, the product privilege, the Fifth Amendment privilege, waivers, and if the government thinks it's going to claim crime, fraud, we want that briefed, et cetera, et cetera, et cetera. And furthermore, if you can show me that there's some reason that it should be done different from what I'm saying, give me a compelling showing of need and show it. That's what the Court said. Having heard, I'm sorry, Your Honor, having heard the Samueli argument, I am fully prepared, I think, for that question. And here's the problem with the order and why the order is final. We have two choices. We can either give our privileged information and information protected by the Fifth Amendment to the government, who will be allowed to participate in the adjudication of privilege, or we can refuse to do that and lose privilege protection over the documents the government already has. The Court has said if we do not share additional privileged information and information clearly protected by the Fifth Amendment, and I can explain that in more detail, she will find waiver as the documents that are in this case. Counsel, I have a question for you. Yes, Your Honor. When you say the Court's ordering you to provide more privileged info, are you speaking about answering the Court's request for a privilege log? No, Your Honor. We have provided the Court with an extremely detailed privilege log. We've also provided her with declarations of three lawyers who have discussed the documents at length. We have resisted. I thought that the Court didn't think the privilege log was adequate. That's correct, Your Honor. One of the problems is the Court is focusing only on the privilege log and not on the declarations of counsel. The reason the privilege log is somewhat, although I will say it passes muster under this Court's decision in Enright Grand Jury v. Corporation, but the reason that she wants the privilege log to be amplified is she wants details about privilege documents the government already has given in a privilege log to the government. So what we did instead is we tried to follow this Court's guidance in Enright Grand Jury. We created a privilege log which we gave to the government, but we gave the Court three extremely detailed declarations of counsel explaining why the documents the government has seized, possessed, used for over a year were the communications of each of those counsel with the client. So the Court's opinion does focus on the log, but the record shows, and I believe the Court has before it as exhibits, there are extremely detailed declarations exhibiting privilege. I would agree. Extremely might be a slight overstatement. Extremely might be a slight overstatement. We followed the Court's direction in Enright Grand Jury. The Court wants to know, for example, if you've got ten documents, don't tell me documents in 2007, for example, tell me document by document what it is you want. Well, Your Honor, some of these are one of the things that was seized, as you can tell from reading the declaration and the privilege log, is a long notebook of communications with me and others, other lawyers, that is. The notes are not dated. We know approximately when they were created because we lawyers were in the room when they were taken and addressed. But we don't have specific dates. The Court may know that clients don't always prepare documents that are privileged in the way that we're used to seeing them when we make productions of attorney records. Their notes of conversations with us could be undated. We know when the documents started because I was there talking to the client the day it all began about this very investigation. My name is there. My phone number for conference line is there. It is quite clear the documents are privileged. Had the Tate lawyer in this case done what is usually done by Tate counsel, and that has approached me or the other counsel for Western prior to giving the documents to the government, we easily could have convinced him I believe the documents were privileged. Had we not been able to convince him, of course, we would have had the ability then to go to a court and seek the court's intervention. What happened instead is an uninformed Tate lawyer who didn't even know the names of all the lawyers who represented Western, didn't know the name of the general counsel whose notes are all over the place and were seized, decided the documents unilaterally, uninformed, decided the documents were not privileged. As a result of that initial determination, I wrote a letter and I said, wait, we need to see the documents that you seized, we need to decide for ourselves whether they are privileged or are work product, which many of them are, and please respond. No one has to respond. What's that got to do with the court order? I understand all of this. I understand your complaints about the government sitting on these documents. I understand that. The government does have the documents, though we know that at this point. So that wouldn't – when the other side already has the documents, that doesn't necessarily show that you get an interlocutory order. The point is the government has all the documents. We know that. What you're trying to do is explain to the court why the court should not permit them to use the documents, correct? No, Your Honor. What I'm trying to explain to the court is that the fact that the government has the documents makes it much more perilous for me to provide additional information to the government. We have no quarrel providing the information to the court. Judges need to have information sometimes to make privileged determinations, although I will submit to you that in a grand jury, this court directed the San Diego District Court that they could make those determinations purely on declarations from past. And the court says, if you can show me some compelling reason why in some particular instance I should not get this information and have you put it on your privilege log, then tell me. Prove it to me. That's what the court says. She also said, I had to give everything to the government before I could proceed further. She said I had to give a more detailed information to the government? She says you have an obligation to give documents to the prosecution unless you can show me why not. Your Honor, the government already has the documents. This is not a grand jury. You just said to me, well, she wants me to get more documents from the government. No, more information, Your Honor. Information, she said. The difference is, in order to give information about privileged documents. Counsel, wait a minute. The court says over and over again, I will listen to further argument. I will let you give me more argument. I will let you give you – I will let you tell, show me, particularize, tell me why something shouldn't be turned over. Does it not? The order says that unless I provide the government with information such as the author of notes that the government has already used against the author, even without knowing the purported author, even without having the evidence of who the author is, I must tell the government who wrote the notes. Otherwise, she will not, she will not consider privilege argument and she will find waiver. The problem is – Okay, counsel, my question, my question on that point is, it may be I'm missing something. So, you know, tell me if I am. But it seems to me at first blush, you know, having litigated cases in the past before I was a judge, where we did privilege logs, that if you don't identify who did the notes, then the court can't assess attorney-client privilege because they can't know if it's from the client to the lawyer or if it's from someone who's in the type of group at the client that could have a privilege communication, if what used to be the control group kind of analysis still applies. But, you know, for whatever reason, I'm somewhat sympathetic to the idea that the judge may need to know, you know, who wrote the notes to assess whether or not they're privileged. And if that's true, then why don't you have to produce that information? Your Honor is exactly correct. The judge is entitled to that information. We do not challenge giving the court that information. We simply challenge the court's direction that we must also share it with the  These kinds of decisions are usually made ex parte. In the Taint process, generally, if there's a special master. This Court has recently, it just was published, this United States of America v. Comprehensive Drug Testing, which came out, I think, last week and isn't cited in my brief. The Court makes clear that if there's a Fourth Amendment issue, that decision goes to a special master. These kinds of things go to special masters and are dealt with by lawyers who are not pursuing a prosecution. Your Honor is exactly correct. The issue is not with the court seeing everything. The court, the government gave the court our documents. She has those. We came to the hearing prepared to testify ex parte, give her every single piece of information she needs. We were happy to do that. The problem is the order as it stands directs us to give the government additional privileged information. Not documents, Your Honor, but information about the documents the government already has. Counsel, I'm going to keep going back to one question, which is in making that order, when you recited what the court said, you used the word at the very beginning of unless you do certain things or certain things are shown to the court. How is that a conclusive determination that would give this court jurisdiction for interlocutory appeal? It's conclusive because she says, if you don't do this, I will find waiver of your privilege. Meaning, we lose our privilege over the documents the government already has. So it's still prospective then? The district court's order was still prospective. No, Your Honor. We had to, there's a stay in place because we had to by a certain date give the government information protected by privilege in Fifth Amendment or lose privilege over the documents the government has in their possession. If we didn't do one thing, we lost either way. We either lost privilege over the documents she had or the government has or we had to give more privileged information to the government. It wasn't prospective. It was by this date. And you did not feel that it was appropriate to give any additional information to the court because as Judge Fernandez indicated at the outset, there was a denial without prejudice to the request. It was without prejudice. So it wasn't necessarily final. I take your point, Your Honor. But we had been there already two times. There was a hearing at which I had made all of this clear. But then again, there was also issues as far as, from what I recall, that Western Titanium had, let's say, not been as forthcoming as it could have been throughout this entire process in presenting these logs as they came in. There were delays. There were times when they were incomplete. There were a lot of different issues that came up. And it seems that the court was trying to do everything they could to give an opportunity to comply with the request for privileged logs. Your Honor, it appeared to me that way at the day of the hearing. When we came back, when we came to the hearing, we came prepared to testify. We came with documents. We came with declarations. The court was aware of our declarations and aware of our wanting to testify when she said, no, the government must participate in this. And to Your Honor's other point about our not being forthcoming, the issue has been the same all along. We have considered it to be a – I consider it to be, and I think this Court would my privileged documents with the government. I begged to be able to discuss them with the Taint team. I begged the court for judicial intervention. I sought repeatedly times to have the court – court, but not the government – talk about, look at, and analyze my documents. Yeah. Counsel, I have a question, and I hope Judge Fernandez can give you a little extra time to make sure you can have time to answer, and that is – You have as much time as you need to answer his question. Did you submit the information that the court wants, like the identity of these people? Did you give it to the court with an affidavit filed under seal and a brief arguing why you – in light of that information, which you're giving the court under seal, you shouldn't have to disclose that to the government? We – excuse me, Your Honor. We gave her a brief. We gave her the declarations under seal, and we argued we should not have to disclose it to the government. We did not identify by name the individuals. We said they were Western employees who had created various of the notes, or in some cases, the lawyer, because some of the information is work product. The information goes to the very heart of the case in that way. So she's aware – she was aware we would provide her with the names also, Your Honor. Ex parte. Kate, thank you. Thank you. Thank you, Your Honor. I take it I have no time for rebuttal.  Thank you, Your Honor. May it please the Court. Stacey Sullivan on behalf of the United States in this matter. The government has filed a motion to dismiss in this matter, and it is the government's position that this is, in fact, is not a final order that's suitable for an interlocutory appeal. Now, the district court has tried very hard in this case to give the defendants every And I want to make it very clear. Number one, the government does not dispute that if these documents are, in fact, attorney-client privileged, then they are protected. But the government has, from the beginning, always maintained that these documents that are at issue in these – in this motion are, in fact, not privileged. And the district court indicated in her ruling of April 15, 2009, that, in fact, nothing on their face establishes that they are privileged. And she is simply trying to obtain the necessary information to make that determination, which is why this is not a final order. The information she's requested that they provide is not only necessary, it is not protected whatsoever. It follows directly Ninth Circuit precedent in what is required to be provided not only to the government – not only to the court, but also to the government in a privilege log. It's – the United States did not get any privilege log in this case in any way, shape or form, nor did it get the identity of any document that – to which privilege was claimed until the privilege log was submitted to the government after the March 13, 2009 hearing, wherein she said, if you're going to submit a privilege log to me in camera, it goes to the government as well. There were also numerous other affidavits that were submitted to the court ex parte that the government to this day has never even seen, but the court has, attempting to provide more information in regards to what's in the privilege log. So in terms of the privilege log is what was required to be given over to the government, which it had never seen up until after the March 13 hearing. But the ex parte declarations were never given over to the government. And indeed, numerous ex parte declarations have been submitted to this court in support of the defendant's appeal. The government doesn't even have access to the information, nor does it know what this court has reviewed in preparation for this motion. So – Is the government objecting to that or just stating it as a fact? No, I'm just stating it as a fact. Okay. The government can see that there may be privileged information that might have to be disclosed in order to fully explain the privilege. And I believe the district court's order directly addresses that when it says, if there's a compelling need that it be done ex parte, please explain. Let me ask you your understanding. The district court has – a privilege log has been submitted. Correct. The district court said that's just not sufficient. And it has to go to the government, too, right? The privilege log itself? Yes. Okay. Now, district court said, among other things, look, you haven't said who the client is. You haven't said who the lawyer is on your privilege log. All right? Now, suppose – just for the moment – suppose that that shouldn't have to be disclosed to the government, that information, although it should be disclosed to the court in some fashion, assuming that's the case. All right? All right. Do you – how does the court order not – let me put it that way – say, sorry, either you put it on a log and give it to the government or you're finished? The court order specifically addresses that when it invites the defendants to brief their Fifth Amendment claims. It's my understanding from reading all of their briefs that the only reason they say that they cannot identify the client that drafted the documents, that was involved in drafting the documents, is because it would violate that person's Fifth Amendment right against self-incrimination. The problem we have in this case is that the attorneys represent both the corporation which has no Fifth Amendment right and the individual defendant who does. And they refuse to clarify on behalf of whom they're asserting the privilege. To whom? To the court. Even the court. How about to you? Well, I guess what the – well, I know what the court did is in its order it said, if you believe that you don't have to disclose this information because of Fifth Amendment grounds, it invited the defense to please brief that issue and address it to the court. The first time the Fifth Amendment was ever raised as a reason not to identify the author of these documents was orally by the defense attorneys at the March 13, 2009 hearing. And it was one sentence. That's the first time it was ever raised. And Judge San Martino then addressed it, invited further briefing on her April 15, 2009 order. She said, if you believe you have a Fifth Amendment protection not to disclose this information, please brief it for me. All right. That's why I'm trying to be very specific about a specific thing. Let's say, got the privilege log. The court said – seemed to say the privilege log is not sufficient. We – you can't just say a bunch of documents in 2007. You've got to give us more information than that. The court seemed to say that. Okay. Now, if, hypothetically, one could say, well, if I give you more information on that particular item, I will be violating the attorney-client privilege or whatever. I'll be giving up my privilege. Okay? Okay. Is it the government's position that, in that case, what the court is saying is, okay, brief it and show it to me? You don't have to put it on there to start with, but brief it to me and show it to me, and you don't have to give the show documents to the government. Is that correct? Correct. It's my understanding that what she was saying was that the privilege log, which we hadn't seen by March 13, 2009, does have to be given to the government. And what I'm requiring in the privilege log, she outlines specifically, and it's based on black-letter Ninth Circuit law, what's required to be provided to not only the court but the government in a log. For example, name of client. Exactly. Okay. Now, but let's say, for whatever reason, name of client is going to cause a problem because you're sitting with a document, and to say to you, the client is Joe Smith, the government can say, aha, now we can go after Joe Smith, too. So they don't want to say Joe Smith to you. Yes. Okay? But they would say it, this is all hypothetical, to the court. Now, in your view, is that violating the court order? With briefings, et cetera. No. With briefings, it wouldn't be violating the court order because the court left herself the option to determine that, in fact, maybe it might not be appropriate to disclose to the government certain items, but it had to be explained in more depth. This is not the first time they tried to explain to the district court why their documents were privileged. They did it numerous times, and they did it pre-indictment in two Rule 41 motions. Yes. I mean, so much information has been given to this court, and the government hasn't had access to it. But even if they did, if identifying the person who actually created the document would reveal the substance of the communication, which the government already has, it's the remedy, the appropriate remedy here is suppression. This is a suppression motion that is being argued post-indictment. There are numerous... Counsel? Yes. Counsel, I have a question for you. Yes. This is probably way out in left field. I might be... There might be no chance of this, but, you know, if we were to defer submission for... I mean, the case has been submitted, but if when we confer, we were to decide that we would defer submission of the issues and our decision for a period, let's say two weeks or a month, and send you and the Western Titanium Council, if you both wanted to do it, to our circuit mediator, is there any chance that both parties could work out some agreement, stipulation that could be given back to the district court? I have never entertained a question such as that, and it never even considered... I'm not familiar with the process of going to the circuit mediator. I... Well, here's... Let me just add this. If... It's just a question I have, so I don't mean to put you on the spot. In fact, if we... We have cases where we enter orders that give parties a chance to mediate if they want, but we always or we normally say that we don't want the parties to tell us if they want to do it or not. So I didn't mean to put you on the spot for that. What we do is we send an order out, and we let both parties advise the clerk if they want to proceed with that. And if either one doesn't, we don't know which party doesn't want to do it. Just the problem I'm having with this case is it seems like an awful lot of procedural disagreement in a situation where we may or may not have jurisdiction, and it may be something that could be resolved. So, anyway, I don't want to put you on the spot as to whether the government would or would not mediate. I was just wondering if there might be a chance if the parties discussed it, if they could work out a procedure to tender to the district court. Anyway, I'll think about that. You don't have to respond. Okay. Thank you, Your Honor. I would also... Well, I'll move on to my arguments. One of the reasons that we believe that the district court has requested more information is that the government, in its response, when it finally did get the privilege log, it appears that one of the people they're claiming privilege to is the general counsel of the corporation. And there is an issue as to whether or not the general counsel, the person they're claiming was general counsel to the corporation at this time was, in fact, really general counsel, and it's an evidentiary issue. And the government believes, like any other suppression hearing, it should be entitled to cross-examine that witness on specific areas that are not privileged. For example, whether or not Western Titanium was, in fact, this person's client at the time they're claiming he or she represented her. So there are factual issues here and evidentiary issues that are much more similar to a suppression hearing. It's not a Rule 41G return of property motion. We have the property. They have copies of everything we have. There's no secrets about who has what. And at this point, it's whether or not it can be used in evidence at trial. And that is something that we believe they're not entitled to litigate in a vacuum behind closed doors without giving minimal information to the government in terms of what is required in the law. What is what? What is required in the privilege law. For example, the name of who created the document, the attorney that participated, it was communicated to, the factors that were outlined specifically by Judge San Martino in her order. And I see that my time is almost up, and now I'm willing to submit, Your Honor, unless you have any further questions. Well, just to clarify, as I understand what you're saying, is if there's a claim of privilege with an attempt to block admission of this evidence, that the government would need to know the standard, you know, who sent it, what date, all the issues, all the factors that go towards whether it's privileged or not, so that you could argue about that. That's exactly the government's position in this case, yes. I thought you said a moment ago that you, if I understood, I thought you said a moment ago that in my hypothetical, you would not need to know the name of the alleged client necessarily, if indeed that itself would violate the privilege, only the court would need to know that. Is that correct? That is true. We're entitled to what's in the law, but if there's some type of exceptional circumstance that the defense can justify to the court that we are not entitled to know it because it would violate their privilege, then, in fact, the government would concede that. Thank you. Thank you, Counsel. What's the pending status in the district court? Is there a trial date set? Where is this in district court? We had a trial date set for October 5th, and we had a substantive motion date scheduled for August 31st, where we were set to argue substantive motions, but that was vacated on the court's own motion, so we're pretty sure that the trial date's been vacated. But also, the government superseded the original indictment and added an additional 56 counts, to which no substantive motions have been filed. So there's a superseding indictment out there to which one substantive motion has been filed, but there's other substantive motions that may possibly be filed. May I just say one thing? Sure. You just did. I'm sorry. We think we have a firm trial date of October 3rd. Okay. And two things. I think that's a great idea. Excuse me? I know I'm not supposed to say what I think, but I think the mediation idea is a great idea. Okay. And that, thank you very much. I'm going to intrude on your patience. All right. This matter will stand submitted. We thank you both for your argument. Thank you. Thank you very much for now. Okay. Let's put that. All rise. This session stands adjourned. We're going to take a break.
judges: Fernandez, Gould, England